Banco de Puerto Rico, Etc., Appellant, *v.* Registrar of Property of San Juan, Second Section, Respondent.

No. 981. Submitted November 2, 1936.—Decided December 15, 1936.

*José* and *Rafael Ramírez Santibáñez* for appellant. The registrar appeared by brief.

Mr. Justice Travieso delivered the opinion of the Court.

The Banco de Puerto Rico, as liquidator of the Banco Comercial de Puerto Rico, foreclosed a mortgage by the sum-

mary proceeding, upon a property belonging to Rafael Saldaña and his wife, Mercedes Padial, which was also encumbered by an attachment for the sum of $1,200, levied by José del Río and recorded in the registry subsequent to the record of the mortgage so foreclosed.

The demand for payment was notified to the debtors, Mr. Saldaña and his wife, and to José del Río, and after the elapse of the period provided by law, the sale of the property at public auction was ordered, and the property was finally awarded to the bank for $4,000. The clerk of the district court of Bayamón issued a writ to the registrar of property of San Juan, second section, directing him to cancel on the books of the registry in his charge, the attachment referred to in the order copied in the writ, which reads literally as follows:

"Upon hearing of the foregoing motion, the court grants the same and orders the cancellation of the subsequent lien, consisting in an attachment for the sum of $1,200 levied by José del Río, encumbering the property awarded to the Banco de Puerto Rico, as liquidator of the Banco Comercial de Puerto Rico, at the public auction held on August 25, 1936, in the above entitled cause, since it appears from the record that the properties so sold produced no balance whatever for the payment of subsequent claims, and since it appears moreover from the record that the aforesaid subsequent creditor was personally notified of this proceeding, on May 16, 1936, and that in addition all the requirements of law were complied with; it being further ordered that the clerk of this court issue a writ directed to the registrar of property of San Juan, second section, to cause the proper cancellation to be made on the books of the registry in his charge, of the said attachment, which encumbers the property so foreclosed and which is described as follows:"

This writ was presented at the registry, together with the deed of judicial sale executed by the marshal in favor of the foreclosing bank, and the registrar placed the following notation upon the back of the writ:

"The foregoing cancellation was made at folio 237 over, volume 87 of Bayamón, property 3738, 3rd inscription, with the curable de-

fect that the order of court is not final in accordance with Section 82 of the Mortgage Law.—San Juan, September 22, 1936."

The party desiring such cancellation appeals from that decision of this Court.

■■ In his brief the registrar cites Sections 82 and 125 of the Mortgage Law, admitting as well that Section 295 of the Code of Civil Procedure is applicable as supplementing the Mortgage Law according to the final paragraph of Section 176 of the Regulations.

Section 125, *supra,* is found in Title V of the Mortgage Law, which deals with "Mortgages," and reads as follows:

"If there be only one estate mortgaged, or if several properties are encumbered by one mortgage and the proportionate amount secured by each shall not have been determined, because of the division of the original property into two or more as mentioned in article 123, no matter what portion of the mortgage the debtor may have paid he can not demand that any part of the mortgaged property be freed from the encumbrance.

"Where one or more estates are encumbered by mortgages held by several different creditors and they should be sold, or assigned in payment to the first creditor, in such manner that the value of what is sold does not equal or exceed the mortgage debt which is liquidated, the remaining credits shall be understood to have been canceled *ipso jure* and *ipso facto,* and they shall be canceled in the registry upon presentation of the proper order of the court showing the sale or the award and the reasons therefor, with a statement of the act which constitutes the settlement of the preferred credit, all subsequent records of mortgages and rent charges, and records of attachments also entered subsequently, releasing and freeing the state or estates sold or assigned from all encumbrances of this character.

"This shall be understood to be without prejudice to the other rights and actions which remaining creditors may exercise against their debtor in accordance with the law."

The corresponding provision in the Peninsular legislation is Section 125, which was amplified when incorporated under number 133 in the statute of 1880 for Puerto Rico, by the addition of the two last paragraphs as they appear today.

The commission charged with drafting the provisions of the Peninsular mortgage legislation to be applied to the Province of Puerto Rico, explains the change as follows:

"Title V, of Mortgages, is the same as that of the statute above mentioned insofar as it deals with questions of substance, but some Sections have been clarified and Section 125 of the Peninsular Act (133 of the Puerto Rican Act) has been amplified to provide that when the mortgaged property is worth not more than enough to pay the first lienor and is encumbered by subsequent mortgages held by by other creditors, the mortgages held by the latter will be expressly cancelled, so that the property is not forever encumbered by illusory liens which subsequent creditors have no interest to cancel and which may hinder free alienation by a purchaser." See 1 Stuyck, *Legislación Hipotecaria,* p. 33.

When the Mortgage Law now in force in Puerto Rico was approved in 1893, this Section was numbered 125, and the wording of the second paragraph was varied somewhat.

Its provisions, as may be seen, are substantive and not procedural in character. Briefly, a recorded real right is considered as extinguished when, if the property be sold at judicial sale or an award be made, the proceeds of the sale are insufficient, after payment of the claim of the first lienor, to pay subsequent recorded liens. Insofar as the general effect of cancellation is concerned, its forms, the cases in which it may be asked for or ordered, the formalities and requisites necessary for cancellation, are matters covered by Title IV of the statute, which commences with Section 77 and ends with Section 104, both inclusive. See 3 Morell, *Legislación Hipotecaria,* page 369. On page 400 of the same volume, the author says: "Sections 82 and 83 (which form part of Title IV) may be said to comprise all matters with respect to cancellation insofar as the *formalities and requisites necessary for cancellation are concerned.*" (Italic ours). We must refer to those Sections when a question is raised as to how to carry out or make effective the provisions of Section 125.

Among these Sections is 79, which provides:

"A total cancellation may be demanded and must be ordered in case:

"1. . . . . . . . . . .

"2. When the recorded right is also completely extinguished.

"3. . . . . . . . . . .

"4. . . . . . . . . . ''

According to Section 132 of the Regulations for the Execution of the Mortgage Law,

"A recorded property right shall be considered extinguished for the purposes of Subdivision 2 of said article 79:

"First: _____

"Second: _____

"Third: When an estate having been sold by order of the court and the first mortgagee having been paid, no balance remains to be applied to the payment of credits recorded subsequently, in accordance with the provisions of article 125 of the law."

Pursuant, therefore, to the Sections hereinbefore copied, the mortgage referred to in the second paragraph of Section 125 of the statute, subsequent or junior to that foreclosed by the first lienor, are considered extinguished by operation of law, and an order directing cancellation thereof must be granted, if it be asked for. There might be some doubt as to whether subsequent records of attachments are also considered extinguished by operation of law, since Section 132 of the regulations speaks of a "recorded property right," and the record of an attachment is not a property right. See 3 Morell, *Legislación Hipotecaria,* page 446. Nevertheless, we are of the opinion that they are also considered extinguished in view of the manner in which Section 132 of the statute and the third paragraph of Section 132 of the Regulations are drafted.

■■ Section 82 of the Mortgage Law, insofar as is pertinent to this appeal, provides that:

"Records or cautionary notices made by virtue of a public instrument can be canceled only by a final order from which no appeal for its annulment or reversal is pending or by another instrument or authentic document in which the person in whose favor the rec-

ord or entry may have been made, or his assigns or legal represen-
tatives signify their consent to the cancellation.

"Notwithstanding the provisions of the foregoing paragraph, the
records or entries referred to therein may be canceled without said
requisites when the recorded right is extinguished by a provision of
law, or it so appears from the recorded instrument itself.

"Records or entries made under a court order may be canceled
only by virtue of final orders of the character mentioned in the first
paragraph of this article."

In accordance with the first paragraph of the Section just
quoted, "records of cautionary notices made by virtue of a
*public instrument*" may be cancelled in two ways, that is:

(1) "by a final order from which no appeal for its annulment
or reversal is pending."

(2) "by another instrument or authentic document in which the
person in whose favor the record or entry may have been made,
signifies his consent to the cancellation."

Barrachina believes, and in our opinion with good reason,
that:

"The legislature has preferred the method of cancellation by
judicial order over that by public instrument, when the more natural
thing to have said would have been that such cancellations shall be
made by public instrument in which the person in whose favor the
record or entry may have been made, or his assigns or legal repre-
sentatives, signifies his consent, *and in default of this method* (the
voluntary, peaceful, and normally expeditious way) by a final order
from which no appeal for its annulment or reversal is pending."
2 Barrachina, *Derecho Hipotecario y Notarial,* p. 304. (Italics ours.)

The second paragraph of this same section provides that
to cancel the records of cautionary notices made by virtue of
a *public instrument,* that is, those to which the preceding
paragraph refers, it is unnecessary to have either a final
order or a public instrument "when the recorded right is
extinguished by a provision of law, or it so appears from
the recorded instrument itself."

We have seen that this is the situation in the case pro-
vided for in the second paragraph of Section 125 of the

statute. Under these circumstances, reference must be made to Section 137 of the Regulations, which, insofar as material to this case, provides:

"As a consequence of the provisions of the second paragraph of article 82 of the law, the cancellation of records the existence of which is not dependent on the will of the persons interested therein, shall be effected in the following manner:

"First:

"Second: When as a consequence of the preference mentioned in subdivision 4 of article 107 of the law in favor of the first mortgage creditor, the estate or right encumbered is sold under a judicial decree, the records of debts in favor of second or subsequent creditors shall be cancelled at the instance of the person who is shown to be the owner of the property or right encumbered upon the mere presentation of an order directing the cancellation, which order must state that the proceeds of the sale were not sufficient to cover the claim of the former, or that the surplus, if any, was deposited for distribution among subsequent creditors."

Following the second paragraph of Section 82 of the statute there is another which refers to the cancellation of records or notices made by virtue of *court orders*. As to these it is provided that they "may be cancelled only by virtue of final orders of the character mentioned in the first paragraph of this article," or in other words, by a final order from which no appeal is pending.

Every attachment of real property must be made, according to Sections 1 and 9 of the Act to Secure the Effectiveness of Judgments, approved on March 1, 1902 (Comp. Stat. 5233, 5241), by an order of the court having cognizance of the suit, which upon presentation to the registry by writ, produces the desired notice. It is then by virtue of a court order that the registrar acts in making a record of an attachment on real property, among other liens.

From what we have said, it appears that even though the first and second paragraphs of Section 82 permit a certain freedom as to the cancellation of records and cautionary

notices made by virtue of public instruments, the third paragraph, referring to those made by virtue of court order, is exacting in its mandatory requirements and means for cancellation. It likewise appears from what we have said that since attachments are recorded by virtue of court orders, the provision governing their cancellation is found in the third paragraph to which we have just referred.

Briefly, if the real right was recorded by virtue of an *instrument,* and was extinguished by provision of law, cancellation is governed by the second paragraph of Section 82 and by the corresponding Section 137 of the Regulations, which requires only a *writ.* If the right was recorded by virtue of public instrument and it has not been extinguished by operation of law, then the cancellation must be made by instrument or authentic document in which the person in whose favor the record was made gives his consent, or lacking such consent, by a *final order* from which no appeal is pending.

If on the contrary, however, a situation like the present is involved, in which the record (the attachment) has necessarily been made by virtue of a court order, then in accordance with the plain provisions of the third paragraph of Section 82, the cancellation *must* be made by virtue of a final order from which no appeal is pending. Whether or not the record is extinguished by operation of law, the third paragraph of Section 82 is conclusive that the cancellation must be made by final order.

Notwithstanding what we have just said, a situation might arise where the order directing the cancellation of the subsequent lien is not appealable under the provisions of Section 295 of the Code of Civil Procedure, and is therefore final from the moment in which it is rendered. It is obvious that in such case a cancellation would be proper immediately after the issuance of the corresponding writ. Where the order is final, it complies with Section 82, *supra,* since, as Morell says:

"The argument is not very convincing. The fact is that in Section 82 the phrase 'from which no appeal for its annulment or reversal is pending' is unnecessary; it is sufficient to say that the order in question is final or executory." 3 Morell, 473.

 Section 295 of the Code of Civil Procedure says, insofar as is material to this case, that:

"Section 295.—An appeal may be taken to the Supreme Court from a District Court:
"1. . . . . . . . . .
"2. . . . . . . . . .
"3. From an order . . . dissolving or refusing to dissolve an attachment . . . within ten days after the order or interlocutory judgment is made and entered on the minutes of the court or filed with the secretary."

The question is thus reduced to a determination as to whether the order of the district court of Bayamón directing the cancellation of the attachment for $1,200 involved in this appeal, is or is not appealable under the provisions of that Section.

In *Gelabert & Co., S. en C.* v. *Morales et al.,* 28 P.R.R. 560, the court ordered an attachment of properties of the defendant to secure the effectiveness of the judgment. The attachment was levied upon properties of Burgos, who asked for, and secured, on April 30, an order vacating the order and lifting the attachment. One month later Burgos asked the court to issue a writ directing the marshal to carry out as executory the order of April 30. The court so ordered, and the plaintiff appealed. This Supreme Court held:

"The appellee has no raised the question of whether we have jurisdiction to consider this appeal; nevertheless we should dispose of this question *motu proprio.*

"We are of the opinion that the order from which the present appeal was taken is not appealable because it does not come within any of the cases included in Section 295 of the Code of Civil Procedure, inasmuch as it does not dissolve the attachment previously granted, but only directs the execution of the former order of April 30, 1919, which actually set aside the order for the attachment in

this case. The order of April 30, 1919, was appealable, for it set aside the order granting the attachment, but it can not be reviewed now in an appeal from an order merely directing its execution. If the course followed by the appellant were approved any final judgment entered in a suit would be reviewable in an appeal taken after judgment from an order for its execution."

In *Pizá & González* v. *Ramis,* 24 P.R.R. 809, on account of a summary mortgage foreclosure proceeding brought by Ramis against Pizá & González, the defendants brought an action against the plaintiff to cancel a mortgage and to require him to execute a deed of cancellation. They secured an order of court directing the retention of all sums which might be deliverable to Ramis on account of the summary proceeding and consequent sale. Ramis then asked that the amount of a bond necessary to set aside the order of retention be fixed, and the court fixed the bond at $700. Thereafter, and without any bond having been filed, Ramis asked that the $700 retained under the order of court be delivered to him. This motion was denied by order of June 23, 1916, and from this order Ramis appealed. This Court said:

"The appellees raise the question of law as to whether the order of June 23, 1916, is appealable. We are of the opinion that it is inasmuch as it comes under Subdivision 3 of Section 295 of the Code of Civil Procedure, which grants the rights of appeal from an order of a district court 'annulling or refusing to annul an attachment,' according to the Spanish text, or 'dissolving or refusing to dissolve an attachment,' according to the English text.

"The order under consideration refuses the dissolution of the retention of a sum of money held subject to the result of an action brought by Pizá & González against Francisco Ramis for the extinguishment and cancellation of a mortgage and, as such, is an order refusing to dissolve an attachment."

In *Hermida y Palos* v. *Gestera,* 20 P.R.R. 423, there was an action of debt in which a property belonging to the defendant was attached to secure the effectiveness of the judgment, and a record of the attachment made in the registry. Thereafter the defendant asked that the attachment be lifted and

the record be cancelled upon the ground that the amount claimed had been deposited in court. The court on January 23, 1914, ordered that the attachment be set aside and that the registrar cancel the record which had been made of such attachment. From this order of January 23, 1914, the plaintiffs took an appeal. The appeal was decided as follows:

"The respondent maintains that we are without jurisdiction to entertain the appeal because the order appealed from is not included in any of the provisions of Section 295 of the Code of Civil Procedure. Respondent is aware of the provision which allows an appeal from any order annulling or refusing to annul an attachment, but he maintains that the order appealed from was a mere modification of the attachment and did not annul or set aside the attachment previously made. He maintains that the deposit in this case being made by virtue of Section 15 of the Law of March 1, 1902, is merely changing the form of the attachment and providing for the continuance of the same. It is also contended that the Law of March 1, 1902, does not cover interest and fees and that it makes no difference that only $800 was deposited without adding an amount sufficient to cover interest and costs.

"By its terms the order of January 23, 1914, left the attachment without effect. If words mean anything, the attachment was thereby annulled. A bond to answer the same purpose does not leave the property attached. The property is necessarily freed from the attachment. Furthermore the attachment by its terms covered different and other sums than the amount of $800 deposited by the defendant. The deposit made by the defendant proceeded on a different theory than the theory of the complainants in making the attachment. From any aspect of the case we think the order of the court annulled the attachment and was appealable."

The order rendered by the district court of Bayamón in this case, here discussed, neither vacates nor refuses to vacate the attachment levied by José del Río. It merely orders a cancellation in the proper books of the registry. It is not, then, comprised within Sub-division 3 of Section 295 of the Code of Civil Procedure, and is not therefore, appealable. The case of *Gelabert & Co., S. en C. v. Morales et al.*, 28 P.R.R. 560 is entirely applicable.

In view of the foregoing the registrar should cancel the subsequent attachment of José del Río, without defect of any kind.

The decision appealed from must be, and hereby is, reversed.

Mr. Chief Justice Del Toro took no part in the decision of this case.